UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SPATARO,

   *Plaintiff*,

v.

DEPARTMENT OF JUSTICE,

   *Defendant.*

Civil Action No. 14-198 (RDM)

## MEMORANDUM OPINION

The matter is before the Court on the Department of Justice's renewed motion for summary judgment. Dkt. 45. Plaintiff Michael Spataro, proceeding *pro se*, is suing the Department under the Freedom of Information Act ("FOIA") to obtain agency records that refer to him; specifically, records from the criminal investigation that resulted in his trial and conviction before the U.S. District Court for the Eastern District of New York. Previously, the Court granted in part and denied in part the Department's motion for summary judgment. Dkt. 26. For the reasons set forth below, the Court will now **GRANT** the Department's renewed motion for summary judgment.

### I. BACKGROUND

The facts of this case are set out in the Court's prior opinion. *See* Dkt. 35 at 2–7. To summarize, Plaintiff was convicted of conspiracy to commit murder in aid of racketeering, assault with a dangerous weapon in aid of racketeering, and use of a firearm during and in relation to a crime of violence in 2006, for which he received a sentence of 338 months' imprisonment. *Id.* at 2. In 2013, he submitted a FOIA request to the Federal Bureau of Investigation ("FBI"), seeking all agency records "pertaining" to him—in particular, those that

"concern[ed] in part" the criminal investigation leading up to his trial and conviction in the Eastern District of New York. *Id.* (quoting Dkt. 1-2 at 3). Upon receiving no responsive documents, Plaintiff brought this FOIA action against the FBI on February 3, 2014. Dkt. 1-1 at 1. In response, the FBI asked for a stay in proceedings so that it could locate and process all responsive records. Dkt. 12 at 1. The FBI released certain responsive records, and, on February 11, 2015, Plaintiff filed an amended complaint challenging the FBI's withholdings of "[r]ecords furnished during the stay." Dkt. 24 at 1 (Amended Compl. ¶ 2).

On March 23, 2015, the Department moved to dismiss, or, in the alternative, for summary judgment, arguing that it had "produc[ed] all responsive, non-exempt documents" and that, "where information has been withheld," it had properly invoked FOIA Exemptions 3, 6, 7(C), and 7(D). Dkt. 26 at 3–4 (citing 5 U.S.C. §§ 552(b)(3), (6), (7)(C), & (7)(D)). The Court agreed in part and disagreed in part. The Court held that it could not conclude that "the FBI ha[d] reasonably exhausted its efforts to locate responsive records" because there were damaged files that were "still . . . 'awaiting remediation;'" the Court noted that, if the remediation process "yield[ed] records that [were] both responsive . . . and non-exempt under FOIA, the FBI should release those records." Dkt. 35 at 24–25. Moreover, although the Court held that the Department had justified its withholdings under FOIA Exemptions 6 and 7(C), *see id.* at 12–17, it concluded that the Department had failed to offer sufficient support for its withholdings under FOIA Exemptions 3 and 7(D), *see id.* at 10–11, 19–20.

Armed with new declarations responsive to the Court's concerns, the Department renewed its motion for summary judgment on January 25, 2018. Dkt. 45. Plaintiff did not respond—despite twice being ordered to so—until October 18, 2018. Dkt. 50; *see also* Dkt. 47 (ordering Plaintiff to respond); Dkt. 46 (same). Plaintiff's opposition, moreover, fails to dispute

any facts the Department relied on in support of its summary judgment motion. *See generally* Dkt. 50. Accepting the government's factual representations as true,[1] the Court concludes that the Department has satisfied its FOIA obligations and will, accordingly, grant the motion for summary judgment.

## II. LEGAL STANDARD

The Freedom of Information Act mandates that an agency disclose records on request, unless they fall within one of nine exemptions. "These exemptions are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and quotation marks omitted). Two FOIA exemptions are relevant here. First, Exemption 3 "provides that FOIA's disclosure obligation 'does not apply to matters that are . . . specifically exempted from disclosure by [another] statute,' if the statute '(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,' or '(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.'" *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 527 (D.C. Cir. 2016) (alteration in original) (quoting 5 U.S.C. § 552(b)(3)(A)). Second, Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes," but "only to the extent that" disclosure "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

"FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56." *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C.

---

[1] Because Plaintiff has failed to identify any record evidence to challenge the Department's Statement of Undisputed Material Facts, the Court will treat the facts contained therein as uncontested for purposes of resolving this motion. *See* Local Civ. R. 7(h); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996).

2016). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In a FOIA action, the Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe '. . . the justifications for nondisclosure [of records] with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Thomas v. FCC*, 534 F. Supp. 2d 144, 145 (D.D.C. 2008) (alteration in original) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). The Court reviews the agency's determinations *de novo*, and the agency bears the burden of sustaining its actions. 5 U.S.C. § 552(a)(4)(B).

### III. ANALYSIS

The Department argues that it has now (1) adequately searched for records responsive to Plaintiff's FOIA request, and (2) sufficiently justified the FBI's withholdings. The Court will address each argument in turn.

**A.     Adequacy of Search**

Previously, the Court denied summary judgment because the Department had not processed the records damaged by Hurricane Sandy. Dkt. 35 at 24–25. The Court noted, however, that once the "remediation process" of those records was complete, the Department could "file a renewed motion for summary judgment." *Id.* at 25–26. The Department contends that it has now finished remediating those records and that it has released to Plaintiff the non-exempt responsive portions of those records in two productions, one on January 24, 2018, and the other on February 28, 2018. Dkt. 45-1 at 1 (Def.'s SUMF ¶¶ 1–2). In support of its motion, the Department offers a third declaration from David Hardy, the Section Chief of the FBI's

4

Record/Information Dissemination Section ("RIDS").  Dkt. 45-2 (Third Hardy Decl.).  Hardy attests that the "FBI [has now] reviewed all thirteen documents previously subject to ongoing remediation."  *Id.* at 3 (Third Hardy Decl. ¶¶ 6–7).  Of the thirteen documents, Hardy attests that "eleven were found responsive to the request, and were processed and non-exempt portions of the documents totaling 56 pages were released to Plaintiff."  *Id.* (Third Hardy Decl. ¶ 7); *see also* Dkt. 45-1 at 1 (Def.'s SUMF ¶ 2).  "The remaining two documents . . . did not contain any information regarding Plaintiff."  Dkt. 45-2 at 3 (Third Hardy Decl. ¶ 7).  With respect to the eleven responsive documents, the FBI advised Plaintiff that "information was being withheld pursuant to [FOIA] Exemptions" 3, 6, 7(C), 7(D), 7(E), 7(F), "as well as exemption (j)(2) under the Privacy Act."  *Id.* (Third Hardy Decl. ¶ 8); *see also id.* at 30 (Ex. A) (Jan. 24, 2018 Letter); *id.* at 34 (Ex. B) (Feb. 28, 2018 Letter).

As noted in the Court's previous opinion, the adequacy of an agency's FOIA search "is judged by a standard of reasonableness."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Now that that the Department has completed its remediation and processing of the thirteen damaged documents, the Court concludes that it is entitled to summary judgment on the adequacy of its search.

B.  **Withholdings**

1.  *Remediated Records*

Plaintiff raises only one challenge to the Department's withholdings for the remediated documents.[2]  *See* Dkt. 49 at 4.  The Court will, accordingly, consider only that contention and will assume that Plaintiff does not otherwise object to the Department's withholdings.  *See Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017).

According to Plaintiff, the Department has "conceded that it withheld non-exempt information as a result of 'segregability review.'" Dkt. 49 at 4.  To the extent Plaintiff means that the Department has "conceded" that it improperly withheld meaningful information that could have been released notwithstanding its invocation of the relevant FOIA exemptions, that is not what the Department has represented.  *See* Dkt. 51 at 2 (citing Dkt. 45-2 at 5–6, 9–10, 25–26 (Third Hardy Decl. ¶¶ 12, 19, 51–52)); Dkt. 45-3 at 6–7 (Myrick Decl. ¶¶ 18–19)).  To the contrary, Hardy attests that "[t]he FBI . . . has released to Plaintiff all segregable, non-exempt information" from the remediated documents.  Dkt. 51-1 at 6 (Fourth Hardy Decl. ¶ 12).

"The FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of portions which are exempt.'" *Taylor Energy Co. LLC v. U.S. Dep't of Interior Bur. of Ocean Energy Mgmt.*, 271 F. Supp. 3d 73, 97 (D.D.C. 2017) (alteration in original) (quoting *Morley v. C.I.A.*, 508 F.3d 1108, 1123

---

[2]  Although unsupported by any argument, Plaintiff also refers in passing to "the substantial quantity of pages withheld entirely, (e.g., 'ten pages in full' . . . )." Dkt. 49 at 3.  To the extent Plaintiff intends to challenge these withholdings, Hardy offers a detailed explanation of the FBI's basis for withholding these pages in his fourth declaration, Dkt. 51-1 at 3–4 (4th Hardy Decl. ¶¶ 6–9), and the Court has no reason to question the applicability of the asserted exemptions.  To the contrary, as explained in that declaration, the ten pages withheld in full contain the names or identities of third parties of "investigative interest" or "information provided by a Drug Enforcement Agency . . . source" whose life or physical safety could be jeopardized if his identity is disclosed.  *Id.* at 3–4 (4th Hardy Decl. ¶¶ 7–8); *see also* 5 U.S.C. § 552(b)(7)(F).

(D.C. Cir. 2007)); *see also* 5 U.S.C. § 552(b).  To satisfy its segregability obligation, an "agency must provide a 'detailed justification' for non-segregability," *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002), such as "describing the materials withheld, the exemption under which they were withheld, and [offering] an affidavit attesting that 'it released all segregable material,'" *Taylor Energy Co. LLC*, 271 F. Supp. 3d at 97 (citation omitted).  The Department has done just that.  As Hardy attests, "the FBI conducted a line by line review of all the information in the responsive material and released as much as possible without disclosing information protected by the cited Exemptions."  Dkt. 51-1 at 3 (Fourth Hardy Decl. ¶ 6).  That representation, along with Hardy's detailed explanation of the FBI's bases for asserting each applicable exemption, was "sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why the responsive documents could not be further segregated."  *Johnson v. Exec. Office of U.S. Atty's*, 310 F.3d at 776 (quoting *Armstrong v. Exec Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996)).

   Plaintiff's sole rejoinder posits that "segregability review[s]" are "prone to subjectivity and fraught with risk of self-servingly broad or overly cautious withholding of information in violation of FOIA."  Dkt. 49 at 4.  That conclusory assertion applies—if at all—to almost every occasion when an agency is required to segregate exempt from non-exempt information.  But the D.C. Circuit has long cautioned that "[i]t is neither consistent with the FOIA nor a wise use of . . . judicial resources" for courts to review "segregability disputes" unless "the agency response is vague, its claims too sweeping, or there is reason to suspect bad faith."  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977).  None of these defects are present in this case.

Accordingly, the Court will grant summary judgment with respect to the Department's withholdings from the thirteen remediated records.

2.  *Remaining Records*

This leaves the Department's withholdings pursuant to FOIA Exemptions 3 and 7(D) for the records addressed in the Court's prior opinion.

With respect to the Department's invocation of Exemption 3, the Court previously denied summary judgment because it was unclear whether "the FBI withheld information that was produced in advance of seeking Title III authorizations and that was not used in the actual applications." Dkt. 35 at 11. The Court was concerned that such information did not fall within the scope of Exemption 3. *Id.* (citing *Ewell v. U.S. Dep't of Justice*, 153 F. Supp. 3d 294, 304 (D.D.C. 2016)). The Department now attests, through Hardy's third declaration, that "[t]he FBI . . . [has] reviewed its previous Exemption 3 processing . . . and found no instances where the FBI withheld information related to a Pre-Title III check that could be disclosed because exemptions other than Exemption 3 applied to th[at] information." Dkt. 45-1 at 1–2 (Def.'s SUMF ¶ 4); *see also* 45-2 at 9 (Third Hardy Decl. ¶ 19). Having considered the Department's representation—and Plaintiff's non-opposition—the Court is satisfied that the Department has now justified its withholdings pursuant to Exemption 3.

The same is true with respect to the Department's invocation of Exemption 7(D), which protects records compiled for "law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). Previously, the Court denied summary judgment because the Department had failed to present "probative evidence that the source[s] did in fact receive an express grant of confidentiality." Dkt. 35 at 19 (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (citations omitted)). The

Court explained that "[t]he FBI's declaration simply asserts that various sources received express assurances of confidentiality," but "[a] mere 'boilerplate' assertion . . . 'will not do.'" *Id.* (quoting *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014)). To meet its burden, the Department needed to "provide additional detail," such as "notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.* (quoting *Campbell*, 164 F.3d at 34). The Department now offers Hardy's third declaration as well as the declaration of Katherine L. Myrick, the Chief of the FOIA Privacy Act Unit ("SARF") and FOI/Records Management Section ("SAR") for the Drug Enforcement Administration ("DEA"), to support its assertion that some sources "specifically requested their identities not be revealed due to fear of reprisal and FBI employees made express assurances of confidentiality," while others operated under an implied understanding of confidentiality. Dkt. 45-1 at 2 (Def.'s SUMF ¶¶ 6–7); *see also* Dkt. 45-2 at 17 (Third Hardy Decl. ¶ 33); Dkt. 45-3 at 1, 5 (Myrick Decl. ¶¶ 1, 14).

Hardy's declaration addresses the FBI's express assurance of confidentiality to sources. He attests that most individuals whose information was withheld were referred to in the documents as "confidential informants" or "confidential witnesses"—terms "the FBI only uses . . . when specifically describing an individual who has an explicit agreement with the FBI to have their identity protected." Dkt. 45-2 at 18 (Third Hardy Decl. ¶ 34). Hardy further attests that, "[i]n several instances, the individuals who received express assurances of confidentiality were assigned a Confidential Sources Symbol Number as well." *Id.* Finally, Hardy attests that, "[i]n instances where an individual was solely described as a 'source,' the FBI used other

9

information in the records to determine whether they had an explicit agreement with the FBI to protect their identity," such as "inclusion of a Confidential Source File Number," or "the source's agreement to participate in consensual monitoring, which includes an explicit condition of non-disclosure." *Id.*

Myrick's declaration, on the other hand, addresses "an individual . . . [whose] confidentiality was implied." Dkt. 45-3 at 5 (Myrick Decl. ¶ 14). Myrick attests that "[t]he source was involved with several individuals who trafficked in drugs and engaged in other violent and illegal activities" and that the "information provided by [that] individual related to the illicit trafficking of drugs." *Id.* According to Myrick, "[u]nder these circumstances, it is presumed"—in light of DEA practices—"that the individual would not have provided the information" unless he or she "believed that the information and [his or her] identity would be held in confidence and not released to Plaintiff or the public, except as required by law." *Id.* (Myrick Decl. ¶ 15).

In light of the Hardy's and Myrick's declarations, the Court concludes the Department has sufficiently justified its withholdings pursuant to FOIA Exemption 7(D) by identifying "notations on the face of . . . withheld document[s], the personal knowledge of . . . official[s] familiar with the source[s], . . . [and] practices or policies for dealing with the source or similarly situated sources." *Campbell*, 164 F.3d at 34.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 29, 2019